UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>    v.<br><br>AUDREY ILLEENE CARROLL,<br>   aka "Asiginaak,"<br><br>ZACHARY AARON PAGE,<br>   aka "AK,"<br><br>DANTE GAFFIELD,<br>   aka "Nomad,"<br><br>TINA LAI,<br>   aka "Kickwhere,"<br><br>    Defendants. | Case No. 2:25-mj-07759-DUTY-3<br><br>**ORDER GRANTING APPLICATION FOR REVIEW/RECONSIDERATION OF ORDER SETTING CONDITIONS OF RELEASE (ECF NO. 7)** |

The Government applies for review of an order by Magistrate Judge Pedro V. Castillo setting terms and conditions of release of Defendant Dante Gaffield. The Government requests detention pending trial. (Appl., ECF No. 7; Mem. P. & A., ECF No. 10.) Mr. Gaffield opposes. (Opp'n, ECF No. 29.) The Court heard oral argument on December 19, 2025. (Mins, ECF No. 30.) The Court granted the application at the hearing; this Order memorializes the Court's reasoning.

1

## I. BACKGROUND

### A. Overview

The Government alleges that Mr. Gaffield and his codefendants conspired to plant and detonate backpacks with improvised explosive devices ("IEDs") on December 31, 2025, in the Central District of California. (*See generally* Compl., ECF No. 1.) Mr. Gaffield purportedly reviewed the attack plans, participated in a messaging group via an encrypted application to discuss the plot, traveled with his codefendants to the Mojave desert to test IEDs, and helped set up a tent to keep bombmaking materials and the group shaded from the sun. Mr. Gaffield is charged with violations of (1) conspiracy in violation of 18 U.S.C. § 371, and (2) possession of an unregistered destructive device in violation of 26 U.S.C. § 5861(d). (Compl. ¶ 28.) At Mr. Gaffield's initial appearance, the Government sought detention based on his risk of nonappearance and the danger to the community. Magistrate Judge Castillo ordered Mr. Gaffield released on a $10,000 appearance bond and electronic monitoring, among other conditions. (Mins. of Initial Appearance, ECF No. 12.)

### B. The Government's Evidence

The Government presents allegations of Mr. Gaffield's knowledge of, and overt action in furtherance of, the conspiracy to plant and detonate backpacks containing IEDs on New Year's Eve. In particular, the Government submits that Mr. Gaffield read and reviewed the eight pages of handwritten attack plans authored by one of his codefendants. (Compl. ¶ 17(a)–(b).) In the Signal group chat in which Mr. Gaffield and his codefendants planned the attack, Mr. Gaffield wrote, regarding burner phones: "I have a few burners / But im saving for the big event / The big party [celebrate emoji]." (*Id.* ¶ 18(p).) On December 12, 2025, Mr. Gaffield traveled with his codefendants to the Mojave desert to construct and detonate test explosive devices. (*Id.* ¶ 21(a).) In the desert, he, with others, erected a tent to shade the group and their bombmaking materials, which included "PVC pipes, suspected potassium nitrate, charcoal, charcoal

powder, sulfur powder, and material to be used as fuses," (*id.* ¶ 22), from the sun, (*id.* ¶ 23). At oral argument, the Government proffered that it plans to seek additional charges against Mr. Gaffield and his codefendants within the next week that will carry additional penalties.

Beyond the instant allegations, the Government proffered at oral argument that Mr. Gaffield has a pending bench warrant in California state court for failure to complete the conditions of a diversion program for a charge of misdemeanor battery against a police officer, which included anger management programming. The Government also argues that Mr. Gaffield has a history of violence, citing a five-year restraining order entered against Mr. Gaffield for domestic violence on December 16, 2025. (Mem. P. & A. 9; *id.*, Ex. B.) Finally, the Government observes that Mr. Gaffield's history of mental health challenges "amplifie[s]" the danger Gaffield would pose to the community if released. (*Id.* at 9.)

### C. Mr. Gaffield's Evidence

Mr. Gaffield argues that, relative to his codefendants, he played a "minor support role" in the conspiracy, because he did not devise the plan or transport or handle any bombmaking materials. (Opp'n 7–11.) Regarding his bench warrant for failure to complete the conditions of diversion, Mr. Gaffield observes that the diversion program was for a misdemeanor charge, not a felony, and that two other felony charges for assault with a deadly weapon (non-firearm) and battery on a custodial officer were dismissed. (*Id.* at 11.) With respect to the permanent restraining order for domestic violence, Mr. Gaffield notes that he was unable to attend the hearing because he was in federal custody, and therefore could not contest the allegations. (*Id.* at 11–12.)

## II. LEGAL STANDARD

The Government may file a motion for revocation or amendment of a magistrate judge's release order. 18 U.S.C. § 3145(a)(1). District courts review a magistrate

judge's order of detention or release de novo. *United States v. Koenig*, 912 F.2d 1190, 1191 (9th Cir. 1990). The district court need not proceed as if the magistrate judge's findings and decision do not exist, but it must review the evidence presented to the magistrate judge and, without deference, make an independent determination of whether the findings are correct. *Id.* at 1193. "The district court may also consider new evidence presented by the parties." *United States v. Fanyo-Patchou*, 426 F. Supp. 3d 779, 781 (W.D. Wash. 2019) (citing *Koenig*, 912 F.2d at 1192–93).

Under the Bail Reform Act of 1984, "[o]nly in rare circumstances should release be denied, and doubts regarding the propriety of release should be resolved in the defendant's favor." *United States v. Gebro*, 948 F.2d 1118, 1121 (9th Cir. 1991). A defendant may be detained pending trial only where "no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community." 18 U.S.C. § 3142(e)(1). Detention is appropriate where the government shows by a preponderance of the evidence that the defendant poses a flight risk, or by clear and convincing evidence that the defendant poses a danger to the community. *Gebro*, 948 F.2d at 1121. To make these determinations, courts consider: (1) the nature and seriousness of the charged offense, (2) the weight of the evidence against the defendant, (3) the history and characteristics of the defendant, and (4) the nature and seriousness of the danger to any person or the community that would be posed by the defendant's release. 18 U.S.C. § 3142(g).

### III.   DISCUSSION

The Government contends that no condition or set of conditions of release can reasonably assure Mr. Gaffield's appearance or the safety of the community. (Mem. P. & A. 8–10.) The Court agrees with respect to the safety of the community. Because this issue is dispositive, the Court does not reach the Government's further argument concerning whether Mr. Gaffield is a flight risk.

The nature and seriousness of the charges indicate a danger to the community. 18

U.S.C. § 3142(g)(1) instructs that the Court shall take into account "the nature and circumstances of the offense charged, including whether the offense is a crime of violence, a violation of section 1591, a Federal crime of terrorism, or involves a minor victim or a controlled substance, firearm, explosive, or destructive device." Here, Defendant is charged with possession of an unregistered destructive device in violation of 26 U.S.C. § 5861(d). Moreover, the conspiracy of which Mr. Gaffield is charged pursuant to 18 U.S.C. § 371 poses a grave threat to the community. Mr. Gaffield and his codefendants purportedly planned to plant IEDs at five locations in the Central District of California, posing serious threats to the safety of the community. Though Mr. Gaffield argues that that complaint reveals that the group's intent was to avoid casualties and that the participants intended to warn any individuals they saw about the bomb, (Opp'n 7 (citing Compl. ¶ 21 n.8)), detonating IEDs poses a very high danger to the safety of the community regardless of the group's stated intent.

Moreover, the criminal complaint makes clear that Mr. Gaffield understood and knowingly assented to the scope and intent of the plot. Mr. Gaffield read and reviewed the group's attack plans. (Compl. ¶ 17(a)–(b).) Mr. Gaffield participated in the group chat plotting the attack, writing: "I have a few burners / But im saving for the big event / The big party [celebrate emoji]." (*Id.* ¶ 18(p).) The Court considers Mr. Gaffield's references to "the big event" and "[t]he big party" to indicate an awareness of the planned New Year's Eve attack. On December 12, 2025, Mr. Gaffield chose to travel with his codefendants to the Mojave desert to detonate test IEDs. (*Id.* ¶ 21(a).) In the desert, he helped build a tent to keep the group's bombmaking materials, which included PVP pipes, charcoal, charcoal powder, and sulfur powder, shaded from the sun. (*Id.* ¶¶ 22–23.) From these serious allegations and Mr. Gaffield's clear and knowing participation, the Court cannot conclude that Mr. Gaffield was a minor or non-dangerous conspirator. *Cf. United States v. Mahon*, CR-09-0712-02 PHX-DGC, 2009 U.S. Dist. LEXIS 73916, at *14 (D. Ariz. Aug. 11, 2009) ("Although Dennis appears to have taken more of a leading role . . . than Daniel, . . . the Court cannot conclude that

Daniel is a minor player with no dangerous intentions. The wiretaps and taped conversations proffered by the government show Daniel as an active, encouraging participant in the discussions of violent activities.").

"The weight of the evidence is the least important of the various factors," but regardless, 18 U.S.C. § 3142(g) requires the Court to "consider the evidence 'in terms of the likelihood'" that the defendant "'will pose a danger.'" *United States v. Hir*, 517 F.3d 1081, 1090 (9th Cir. 2008) (quoting *United States v. Motamedi*, 767 F.2d 1403, 1408 (9th Cir. 1985)). Here, the evidence against Mr. Gaffield is strong. The evidence against him includes his own written words in the conspirators' group chat, the testimony of a confidential source, the testimony of an undercover FBI employee, surveillance footage, recorded conversations, and Mr. Gaffield's arrest in the Mojave desert, where his co-conspirators had begun setting up the bombmaking materials. (*See generally* Compl. ¶¶ 17, 18, 21.) The strength of this evidence weighs against pretrial release.

Next, the history and characteristics of Mr. Gaffield also counsel in favor of detention. In particular, Mr. Gaffield's criminal history, past conduct, and mental condition suggest that Mr. Gaffield would pose a danger to the community if released. Mr. Gaffield has a history of violence. Less than a month ago, Mr. Gaffield sustained a temporary restraining order for domestic violence, which was made permanent on December 16, 2025.[1] (Mem. P. & A., at Ex. B.) In addition, Mr. Gaffield has a pending bench warrant for failure to complete a diversion program for a misdemeanor offense of assault on a police officer. (Pretrial Services Report 3.) The Government proffered at oral argument that Mr. Gaffield failed to provide proof of his completion of the anger management programming required for the state court diversion program, and that he

---

[1] The Court acknowledges that Mr. Gaffield was unable to attend the hearing on the permanent restraining order because he was in custody, but notes that Mr. Gaffield was not in detention when the temporary restraining order initially issued on December 1, 2025. (Pretrial Services Report 4.)

failed to appear at a required hearing. This history and failure to complete court-mandated diversion weigh in favor of detention. *See, e.g.*, *United States v. Tuohy*, No. CR-22-01917-001-TUC-JCH (BGM), 2022 U.S. Dist. LEXIS 229790, at *8–9 (D. Ariz. Dec. 21, 2022) (concluding dangerousness was supported by clear and convincing evidence where, inter alia, defendant possessed and transported an explosive device, had history of violent behavior, and had record of non-compliance with supervised release). Finally, the Court notes that Mr. Gaffield has a history of mental health troubles, including in-patient treatment for bipolar disorder and major depressive disorder, and a diagnosis of post-traumatic stress disorder. (Pretrial Services Report 3.) Though Mr. Gaffield's mental health diagnoses, taken alone, would not warrant detention, in the context of Defendant's history of violence and the instant allegations, they suggest a danger to the community should Mr. Gaffield be released.

Lastly, the Court considers the nature and seriousness of the danger to any person or the community that would be posed by the defendant's release. The plot to detonate IEDs at five locations plainly poses a danger to the community. Moreover, Mr. Gaffield's willingness to join and act in furtherance of this conspiracy suggests that if released, he would continue to pose a serious danger to the community. The conditions of release Magistrate Judge Castillo put in place are inadequate to protect against the seriousness of this danger, and the Court does not believe it can fashion any condition or combination of conditions that would mitigate this danger. Mr. Gaffield participated in the conspiracy via an encrypted messaging application. Electronic location monitoring or other conditions of release cannot reasonably assure that Mr. Gaffield will not resume his plotting, endangering the community. The possibility of Mr. Gaffield conspiring with other, as-of-yet-uncharged coconspirators also poses an unacceptably high risk of danger. Therefore, this factor also weighs in favor of detention.

Balancing the § 3142(g) factors, the Court determines that there is an "unacceptably high risk" that Mr. Gaffield "would not comply in good faith with the

proposed conditions, or any other combination of release conditions, imposed upon him." *Hir*, 517 F.3d at 1093. The Court finds that the Government has shown by clear and convincing evidence that Mr. Gaffield poses a danger such that no condition or set of conditions of release can reasonably assure the safety of the community.

## IV. CONCLUSION

The Court grants the Government's application. The Court vacates the Magistrate Judge's order setting conditions of release (ECF No. 12). The Court finds that no condition or set of conditions of release can reasonably the safety of the community. The Court orders Mr. Gaffield detained pending trial. Mr. Gaffield is committed to the custody of the United States Marshal Service.

**IT IS SO ORDERED.**

Dated: December 22, 2025

M RK C.       R I
UNITED STATES DISTRICT JUDGE